### THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| **PEDRO CASTRO and AMALIA CASTRO, a married couple,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiffs,** | |
| **v.** | |
| **UTAH COUNTY, Political Subdivision of the State of Utah; SGT. JEFF S. ROBINSON, a Deputy of the Utah County Sheriff's Office; and DOE DEPUTIES 1 through 4,** | **Case No. 2:22-cv-00464-JCB** |
| **Defendants.** | **Magistrate Judge Jared C. Bennett** |

Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have consented to Judge

Jared C. Bennett conducting all proceedings in this case, including entry of final judgment.[1]

Before the court is Defendants Utah County and Sgt. Jeff S. Robinson's ("Sgt. Robinson")

(collectively, "Defendants") motion to dismiss Plaintiffs Pedro Castro ("Mr. Castro") and Amalia

Castro's ("Mrs. Castro") (collectively, "Plaintiffs") first amended complaint under Fed. R. Civ. P.

12(b)(6).[2] After holding oral argument on the motion, the court took the motion under

advisement and permitted the parties to file notices of supplemental authority on certain issues.[3]

---

[1] ECF No. 11.

[2] ECF No. 49.

[3] ECF No. 61.

The court has carefully considered the parties' written submissions and counsel's oral arguments. Based upon the analysis set forth below, Defendants' motion is granted in part and denied in part.

BACKGROUND

For purposes of this motion, the court assumes that the following factual allegations from the operative complaint are true. On August 11, 2021, at about 12:15 p.m., Plaintiffs arrived by car at a restaurant in Ephraim, Utah, to meet a friend.[4] Soon after Plaintiffs arrived at the restaurant, two Utah County Sheriff Deputies came into the restaurant, spoke to the hostess, and left.[5] Plaintiffs departed from the restaurant at approximately 1:05 p.m. and traveled to their friend's house to drop him off.[6] From there, Plaintiffs proceeded to a store in Ephraim and then to a nearby cemetery.[7] Plaintiffs left the cemetery at around 2:40 p.m. and headed northwest toward Nephi, Utah.[8]

Sometime near 3:10 p.m., as Plaintiffs were entering the Nephi city limits, they realized that a white vehicle driven by a male seemed to be following them and, at times, was following them very closely.[9] The white vehicle continued to follow Plaintiffs into Nephi but eventually turned into a gas station.[10] Plaintiffs then proceeded to a cemetery in Nephi, where they arrived at about 3:30 p.m. and left at about 4:00 p.m.[11] Plaintiffs eventually got on northbound Interstate

---

[4] ECF No. 41 at ¶¶ 16-18.

[5] *Id*. at ¶ 19.

[6] *Id*. at ¶ 20.

[7] *Id*. at ¶¶ 21-22.

[8] *Id*. at ¶ 23.

[9] *Id*. at ¶¶ 24-25.

[10] *Id*. at ¶ 28.

[11] *Id*. at ¶¶ 29, 31, 33.

2

15 to travel to Mrs. Castro's brother's house in Payson, Utah, and then to their son's home in Spanish Fork, Utah.[12]

As they were approaching the Payson offramp, Plaintiffs saw four Utah County Sheriff vehicles on Interstate 15.[13] One of the Utah County Sherriff vehicles rapidly caught up behind Plaintiffs, followed by three other Utah County Sheriff vehicles.[14] The four Utah County Sheriff vehicles then "boxed in" Plaintiffs by surrounding Plaintiffs' vehicle on all four sides.[15] Plaintiffs proceeded to exit 248 in Payson with three of the Utah County Sheriff vehicles continuing to follow Plaintiffs' vehicle.[16] Plaintiffs got off Interstate 15 at exit 248 in Payson and drove to a restaurant to meet Mrs. Castro's brother.[17] When Plaintiffs entered the restaurant parking lot, the three Utah County Sheriff vehicles slowly drove past.[18]

Plaintiffs eventually left the restaurant and proceeded to drive in Payson.[19] As Plaintiffs approached a traffic light, Mr. Castro turned on his left turn signal intending to make a U-turn.[20] After the traffic light turned green, Plaintiffs realized that an unmarked police vehicle was behind

---

[12] *Id.* at ¶¶ 35-37.

[13] *Id.* at ¶¶ 38, 40, 43.

[14] *Id.* at ¶¶ 44-46.

[15] *Id.* at ¶¶ 47-50.

[16] *Id.* at ¶ 52.

[17] *Id.* at ¶¶ 53-54.

[18] *Id.* at ¶ 55.

[19] *Id.* at ¶ 56.

[20] *Id.* at ¶ 58.

them.[21] Instead of making a U-turn, Mr. Castro turned left.[22] Within seconds, Sgt. Robinson, who was apparently following Plaintiffs, activated his vehicle's emergency equipment to stop Plaintiffs.[23] Mr. Castro immediately turned on his right turn signal and pulled to the side of the road.[24]

      After approaching the driver side window of Plaintiffs' car, Sgt. Robinson requested Mr. Castro's driver license and the car's registration.[25] When Plaintiffs asked Sgt. Robinson why he had stopped them, he "responded only with the fact that Plaintiffs were being followed."[26] Sgt. Robinson then told Plaintiffs that he had observed their car swerving in the traffic lane and that Mr. Castro had failed to signal when changing lanes.[27] However, the dash camera video from Sgt. Robinson's vehicle ("Video") shows that Mr. Castro did not cross or touch the traffic lane boundaries and that Mr. Castro never changed lanes after turning left at the traffic light.[28]

---

[21] *Id.* at ¶ 60.

[22] *Id.* at ¶ 62.

[23] *Id.* at ¶ 63. This traffic stop will subsequently be referred to in this Memorandum Decision and Order as the "Stop."

[24] *Id.* at ¶ 64.

[25] *Id.* at ¶ 65.

[26] *Id.* at ¶ 66.

[27] *Id.* at ¶ 67.

[28] *Id.* at ¶¶ 69-70. Consideration of the Video does not require the court to convert Defendants' motion to dismiss into a motion for summary judgment under Rule 12(d) because the Video is referenced in Plaintiffs' complaint and central to their claims, and neither Plaintiffs nor Defendants have disputed the authenticity of the Video. *Mercado v. Ogden City*, No. 1:20-CV-00090-RJS-DAO, 2024 WL 757265, at *2 (D. Utah Feb. 23, 2024) ("When matters outside the pleadings are presented for consideration at the Rule 12 stage, as a general rule the court must either exclude the material or treat the motion as one for summary judgment. But documents— including video and audio recordings—attached to or referenced in the complaint may be considered if they are central to the plaintiff's claim and the parties do not dispute the

Within approximately two minutes, two more Utah County Sheriff Deputies (collectively, "Doe Deputies") arrived on scene.[29] Shortly thereafter, Sgt. Robinson removed Plaintiffs from their car.[30] After Plaintiffs moved to the front of Sgt. Robinson's vehicle, Mr. Castro was searched by one of the Doe Deputies, who asked Mr. Castro whether he was a terrorist or had any bombs, explosives, drugs, or weapons.[31] Mr. Castro responded in the negative.[32] A Utah County Sherriff K-9 unit then searched Plaintiffs' vehicle.[33] Although the K-9 did not "indicate" on Plaintiffs' car, the Doe Deputies proceeded to search Plaintiffs' car for approximately seven minutes, including searching the driver side, passenger side, back interior, interior cargo area, and engine compartment.[34] After the Doe Deputies conducted the Search, Sgt. Robinson issued to Mr. Castro a citation for an infraction for failure to use warning signals and a warning for failure to register Plaintiffs' car in Utah after establishing residency in Utah.[35] Thereafter, the Payson City Prosecutor dismissed the infraction without prosecution.[36]

---

documents' authenticity." (quotations, citations, and footnotes omitted)); *see also Myers v. Brewer*, 773 F. App'x 1032, 1035 n.2 (10th Cir. 2019) (providing that when considering a motion to dismiss under Rule 12(b)(6), the court "may consider audio and video recordings taken from the responding officers' body cameras [that] are referenced in the complaint").

[29] ECF No. 41 at ¶ 71.

[30] *Id*. at ¶ 74.

[31] *Id*. at ¶¶ 76-78. The searches conducted by the Doe Deputies will be subsequently referred to in this Memorandum Decision and Order as the "Search."

[32] *Id*. at ¶ 79.

[33] *Id*. at ¶ 80.

[34] *Id*. at ¶¶ 81-82.

[35] *Id*. at ¶¶ 84-85.

[36] *Id*. at ¶ 92.

Plaintiffs are of Hispanic descent, and English is not their native language.[37] Consequently, Plaintiffs understood little of what the Doe Deputies were asking them during the Stop and the Search.[38] Plaintiffs are residents of Utah and Arizona.[39]

Based upon those facts, Plaintiffs allege causes of action in their amended complaint for: (1) "Deprivation of Rights" under 42 U.S.C. § 1983; (2) "Deprivation of Rights" under Article I, Section 7 (due process) and Article I, Section 14 (unreasonable searches and seizures) of the Utah Constitution; and (3) "Civil Conspiracy" under 42 U.S.C. § 1985(3).[40] Additionally, throughout the amended complaint, Plaintiffs contend that they were deprived of equal protection based upon Defendants' violation of an anti-bias policy promulgated by the Utah County Sheriff's Office ("Policy").[41]

Defendants now move to dismiss Plaintiffs' amended complaint under Rule 12(b)(6), arguing, among other things, that: (1) Sgt. Robinson is entitled to qualified immunity from Plaintiffs' section 1983 claims under the Fourteenth and Fourth Amendments; (2) Plaintiffs fail to sufficiently allege municipal liability for Utah County for their claims under both section 1983 and the Utah Constitution; (3) Plaintiffs fail to state a claim under section 1985(3); and (4) Plaintiffs' state constitutional claims should be dismissed.[42]

---

[37] *Id*. at ¶ 86.

[38] *Id*. at ¶ 88

[39] *Id*. at ¶ 87.

[40] *Id*. at ¶¶ 105-50.

[41] ECF No. 55-4.

[42] ECF No. 49.

**LEGAL STANDARDS**

When considering a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true the well[-]pleaded factual allegations [in the complaint] and then determine[s] if the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'"[43] In addition to accepting a plaintiff's well-pleaded facts as true, the court "view[s] them in the light most favorable to [the plaintiff], and draw[s] all reasonable inferences from the facts in favor of [the plaintiff]."[44] "Rather than adjudging whether a claim is 'improbable,' '[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level.'"[45] "[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[46]

**ANALYSIS**

Based upon the following analysis, the court: (I) grants Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Equal Protection clause of the Fourteenth Amendment; (II) grants and denies Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Fourth Amendment; (III) grants Defendants' motion to dismiss Plaintiffs' section 1983 claims against Utah County; (IV) grants

43 *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

44 *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

45 *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56) (alterations in original).

46 *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Defendants' motion to dismiss Plaintiffs' section 1985(3) claim; and (V) grants and denies

Defendants' motion to dismiss Plaintiffs' state constitutional claims.

I.   **The Court Grants Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claim Against Sgt. Robinson for Violations of the Equal Protection Clause of the Fourteenth Amendment.**

The court grants Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt.

Robinson for violations of the Equal Protection clause under the Fourteenth Amendment because

Sgt. Robinson is entitled to qualified immunity from that claim. "Individual defendants named in

a § 1983 action may raise a defense of qualified immunity, which shields public officials . . .

from damages actions unless their conduct was unreasonable in light of clearly established

law."[47] "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part

burden to show: (1) that the defendant's actions violated a federal constitutional or statutory

right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful

conduct."[48] The court "may address the two prongs of the qualified-immunity analysis in either

order."[49] "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled

to qualified immunity."[50]

> Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity. Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the

---

[47] *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (quotations and citations omitted) (alteration in original).

[48] *Id*. at 900 (quotations and citations omitted).

[49] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

[50] *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

defendant to a more challenging standard of review than would apply on summary judgment.[51]

Plaintiffs have not carried the first part of their burden because they fail to state a claim against Sgt. Robinson for violations of the Equal Protection clause of the Fourteenth Amendment. "[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them."[52] "Conclusory allegations without facts that refer to a particular person or persons treated differently are insufficient to state a claim."[53]

Plaintiffs' complaint fails to include any well-pleaded factual allegations indicating that Plaintiffs were treated differently from other similarly situated individuals. Instead, Plaintiffs' complaint includes the following conclusory allegations to support their equal protection claim: (1) "Plaintiffs were inappropriately profiled, and their treatment and detainment were racially motivated";[54] (2) "Plaintiffs are Hispanic and were deprived of their right to equal protection under the Constitution of the United States";[55] (3) Defendants "had no justification for profiling Plaintiffs";[56] (4) "[t]he only rationale [sic] explanation for Defendants' conduct . . . is that

---

[51] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotations and citations omitted); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (providing that when considering qualified immunity in the context of a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness" (quotations omitted) (emphasis in original)).

[52] *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011) (quotations and citation omitted).

[53] *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1146 (10th Cir. 2023).

[54] ECF No. 41 at ¶ 103.

[55] *Id*. at ¶ 108.

[56] *Id*. at ¶ 110.

Plaintiffs are Hispanic";[57] and (5) "[w]hile acting under color of law, Defendant[s] . . .

intentionally deprived Plaintiffs of Plaintiffs' right to equal protection of the laws as guaranteed

under the United States Constitution from discrimination based on race, gender, age, national

origins, and/or religion as a result of profiling Plaintiffs."[58] Those allegations fail to state an

equal protection claim because they do not refer to any individuals who were treated differently

from Plaintiffs. Because Plaintiffs fail to state an equal protection claim against Sgt. Robinson,

Plaintiffs cannot demonstrate the first part of their burden under the qualified immunity analysis

(i.e., that Sgt. Robinson violated Plaintiffs' federal constitutional rights). Therefore, Sgt.

Robinson is entitled to qualified immunity, and the court dismisses this claim without prejudice.

## II.   The Court Grants and Denies Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claim Against Sgt. Robinson for Violations of the Fourth Amendment.

As shown below, the court: (A) grants Defendants' motion to dismiss Plaintiffs' section

1983 claim against Sgt. Robinson for violations of the Fourth Amendment with respect to the

Search; and (B) denies Defendants' motion to dismiss that claim with respect to the Stop. Each

issue is addressed in turn.

### A.   The Court Grants Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claim Against Sgt. Robinson for Violations of the Fourth Amendment with Respect to the Search.

The court grants Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt.

Robinson under the Fourth Amendment with respect to the Search because he did not directly

participate in the Search. "Because vicarious liability is inapplicable to . . . § 1983 suits, a

---

[57] *Id*. at ¶ 115.

[58] *Id*. at ¶ 116.

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[59] Plaintiffs do not dispute that Sgt. Robinson did not directly participate in the Search. Accordingly, the court grants Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Fourth Amendment with respect to the Search and dismisses that claim with prejudice.

    B.   <u>The Court Denies Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claim Against Sgt. Robinson for Violations of the Fourth Amendment with Respect to the Stop.</u>

The court denies Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt. Robinson under the Fourth Amendment with respect to the Stop because Plaintiffs have carried their burden of showing that he is not entitled to qualified immunity from that claim. As stated above, once an individual defendant asserts the defense of qualified immunity, the plaintiff has the burden of demonstrating: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[60] As shown below, Plaintiffs satisfy both parts of their burden. Therefore, Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Fourth Amendment with respect to the Stop survives Defendants' motion to dismiss.

---

[59] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (quotations and citation omitted)).

[60] *Gutierrez*, 841 F.3d at 900 (quotations and citations omitted).

1. <u>Sgt. Robinson's Actions with Respect to the Stop Violated the Fourth Amendment</u>.

Plaintiffs have sufficiently alleged that Sgt. Robinson's actions with respect to the Stop violated the Fourth Amendment, which provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[61] "[T]he ultimate touchstone" for the constitutionality of a search or seizure under the Fourth Amendment is "reasonableness."[62] The reasonableness of a search or seizure depends upon whether, when viewed objectively, the challenged action was justified under the circumstances.[63]

"In analyzing the constitutionality of a traffic stop under the Fourth Amendment, [the court applies] the 'reasonable suspicion' standard for investigative detentions originally set forth in *Terry v. Ohio*."[64] "To justify a *Terry* stop[,] the detaining officer must have, based on all the circumstances, a 'particularized and objective basis for suspecting' the person stopped of 'criminal activity.'"[65] The Tenth Circuit's "analysis under *Terry* is two-fold."[66] First, the court asks "whether an officer's stop of a vehicle was justified at its inception."[67] "A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has

---

[61] U.S. Const. amend. IV.

[62] *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quotations and citations omitted).

[63] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735-36 (2011).

[64] *United States v. Winder*, 557 F.3d 1129, 1133 (10th Cir. 2009) (referencing *Terry v. Ohio*, 392 U.S. 1 (1968)).

[65] *Id*. (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

[66] *Id*.

[67] *Id*. (quotations and citations omitted).

occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction."[68] The court does not address below whether probable cause existed because it finds that Sgt. Robinson lacked not only reasonable suspicion but arguable reasonable suspicion.

Reasonable suspicion "is based upon the 'totality of the circumstances,' and 'officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'"[69] But in the context of section 1983, the court must consider whether Sgt. Robinson had "arguable reasonable suspicion."[70] This means that an officer may be entitled to qualified immunity "if a reasonable officer could have believed that [reasonable suspicion] existed to . . . detain the plaintiff."[71]

Consistent with Plaintiffs' allegations, the Video demonstrates—and Defendants do not appear to dispute—that Mr. Castro did not commit the traffic violations (i.e., failure to signal and swerving in the traffic lane) that Sgt. Robinson claimed justified the Stop. Thus, based upon Plaintiffs' allegations, there was no objective basis for suspecting that Mr. Castro committed the traffic violations, and, therefore, Sgt. Robinson did not have reasonable suspicion or even arguable reasonable suspicion to initiate the Stop. Consequently, based on the factual allegations

---

[68] *Id.* at 1134.

[69] *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206-07 (10th Cir. 2008) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (alteration in original).

[70] *Id.* at 1207 (quotations and citation omitted).

[71] *Id.* (quotations and citation omitted) (alterations in original).

in the amended complaint, if assumed to be true, the Stop was not justified at its inception, which

compels the conclusion that Sgt. Robinson violated Plaintiffs' Fourth Amendment rights.[72]

  2.  Plaintiffs' Fourth Amendment Rights Were Clearly Established.

Plaintiffs have demonstrated that their Fourth Amendment rights were clearly established

at the time of the Stop. A right is clearly established if "[t]he contours of the right [are]

sufficiently clear that a reasonable official would understand that what he is doing violates that

right."[73] "The challenged action need not have been previously declared unlawful, but its

unlawfulness must be evident in light of pre-existing law."[74] Showing unlawfulness "is generally

accomplished when there is controlling authority on point or when the clearly established weight

of authority from other courts supports plaintiff's interpretation of the law."[75] The plaintiff

generally has the burden of citing to "a controlling case or robust consensus of cases" in which

an officer acting "under similar circumstances" was found to have acted unlawfully.[76] However,

the United States Supreme Court "has said that 'a case directly on point' is not necessary if

'existing precedent [has] placed the statutory or constitutional question beyond debate.'"[77]

---

[72] At oral argument, Defendants appeared to claim that the Stop was justified at its inception because of Sgt. Robinson's issuance of a warning regarding the registration of Plaintiffs' vehicle. Defendants' position is not tenable, however, because Defendants do not dispute that Sgt. Robinson discovered the information about Plaintiffs' vehicle registration after the Stop had been initiated. Thus, that information could not have provided reasonable suspicion to justify the Stop.

[73] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[74] *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).

[75] *Id*. at 1069-70 (quotations and citation omitted).

[76] *D.C. v. Wesby*, 583 U.S. 48, 65 (2018) (quotations and citation omitted).

[77] *Ashaheed v. Currington*, 7 F.4th 1236, 1246 (10th Cir. 2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)) (alteration in original).

Additionally, "'general statements of the law' are 'not inherently incapable of giving fair and clear warning to officers,' as long as the 'unlawfulness' of an action is 'apparent.'"[78] "A general rule can serve as clearly established law when it states 'the contours of [a] constitutional transgression' in a 'well[-]defined' or 'well-marked' manner without leaving a 'vaguely-defined legal border.'"[79]

The Fourth Amendment rights Plaintiffs claim that Sgt. Robinson violated were clearly established at the time of the Stop because those rights were well defined and beyond question.[80] Specifically, Sgt. Robinson could not pull over a car in which the driver was not arguably suspected of violating a traffic law. Therefore, Plaintiffs have carried their burden of demonstrating that Sgt. Robinson is not entitled to qualified immunity from their section 1983 claim against him under the Fourth Amendment with respect to the Stop. Accordingly, the court denies Defendants' motion to dismiss that claim.

---

[78] *Id.* (quoting *White*, 580 U.S. at 79-80) (other quotations and citations omitted).

[79] *Id.* (quoting *Janny v. Gamez*, 8 F.4th 883, 918 (10th Cir. 2021)) (alterations in original).

[80] *Lundstrom v. Romero*, 616 F.3d 1108, 1125 (10th Cir. 2010) ("At the time of the incident, it was clearly established that a police officer cannot effect an investigative detention without reasonable suspicion. . . . We have no difficulty in finding a reasonable officer would have understood the alleged conduct violated the constitutional right to be free from unreasonable seizure."); *Wilson v. Dep't of Pub. Safety*, 66 F. App'x 791, 796-97 (10th Cir. 2003) ("The Fourth Amendment requirement that traffic stops must be based on at least a reasonable suspicion of a traffic violation is clearly established . . . ."); *Gonzalez v. Brunnemer*, No. 21-CV-02851-RMR-NRN, 2023 WL 3005749, at *6 (D. Colo. Apr. 19, 2023) ("The right to be free from a seizure lacking reasonable suspicion is clearly established."), *report and recommendation adopted*, No. 1:21-CV-02851-RMR-NRN, 2023 WL 11643800 (D. Colo. May 16, 2023); *Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1219 (D.N.M. 2010) (concluding that "[t]he right[] to be free from seizure in the absence of probable cause or reasonable suspicion is beyond question" and, therefore, was clearly established).

### III.    The Court Grants Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claims Against Utah County.

The court grants Defendants' motion to dismiss Plaintiffs' section 1983 claims against

Utah County because Plaintiffs have not alleged any facts that would establish municipal

liability.[81]

> A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.[82]

In this context, "[p]roof of a single incident of unconstitutional activity is not sufficient to

impose liability under *Monell* . . . , unless proof of the incident includes proof that it was caused

by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker."[83]

---

[81] Plaintiffs' complaint does not make clear whether Sgt. Robinson is being sued in his official capacity in addition to his individual capacity. To the extent Plaintiffs are suing Sgt. Robinson in his official capacity, the court addresses any such claims here as being asserted against Utah County. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("Suing individual defendants in their official capacities under § 1983, we've recognized, is essentially another way of pleading an action against the county or municipality they represent."); *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 695 (10th Cir. 1988) ("A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.").

[82] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citations omitted); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

[83] *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Rowley v. Morant*, No. 10CV1182 WJ/GBW, 2014 WL 11430980, at *1 (D.N.M. July 14, 2014) ("In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.").

Plaintiffs' complaint fails to make *any* reference to a Utah County policy or custom that is unconstitutional, is directly linked to their alleged injuries, and was implemented by a Utah County policymaker. Instead, Plaintiffs rely upon Defendants' alleged violations of the Policy and contend that "Plaintiffs do not need to set forth defective policy or custom, as Plaintiffs have met the initial showing that Defendants have violated [the Policy]."[84] Plaintiffs' argument misses the mark because their reliance upon the Policy—which Plaintiffs admit is constitutional— cannot form the basis for municipal liability against Utah County. Indeed, violation of a constitutional policy cannot form a basis for municipal liability under section 1983. Instead, as stated above, Plaintiffs must allege the existence of an unconstitutional policy or custom that is directly linked to their alleged injuries and was implemented by a Utah County policymaker. Because Plaintiffs have not done so, the court grants Defendants' motion to dismiss Plaintiffs' section 1983 claims against Utah County and dismisses those claims with prejudice.[85]

## IV.   The Court Grants Defendants' Motion to Dismiss Plaintiffs' Section 1985(3) Claim.

The court grants Defendants' motion to dismiss Plaintiffs' section 1985(3) claim because Plaintiffs have failed to adequately allege the existence of a conspiracy. "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or

---

[84] ECF No. 55 at 8.

[85] The court previously concluded that Defendants' alleged violations of the Policy could not form a basis for municipal liability against Utah County. ECF No. 35 at 4-5. Nevertheless, Plaintiffs asserted those section 1983 claims against Utah County in their amended complaint. Under those circumstances, dismissing those claims with prejudice is appropriate here.

deprivation resulting therefrom."[86] "The existence of a conspiracy is 'an essential element of a claim under section 1985(3),' and a plaintiff must allege facts to show 'a meeting of the minds among various defendants to violate his constitutional rights.'"[87] "Section 1985 conspiracy claims must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."[88] "To state a claim under section 1985, a plaintiff must do more than merely allege the existence of a conspiracy in conclusory fashion."[89] Although a plaintiff's "factual allegations may be either direct or circumstantial,"[90] "dismissal remains appropriate . . . if the clams are based on nothing more than conclusory allegations lacking any supporting factual averments to show agreement and concerted action."[91]

Plaintiffs fail to sufficiently allege the existence of a conspiracy because they do not provide any well-pleaded supporting factual allegations. Instead, Plaintiffs' include only the

---

[86] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

[87] *Tilghman v. Kirby*, No. CIV-13-73-D, 2013 WL 6092529, at *2 (W.D. Okla. Nov. 19, 2013) (quoting *Callins v. Bd. of Cnty. Comm'rs of Cnty. of Greer, Okla.*, 930 F.2d 32 (Table), 1991 WL 50538, at *4 (10th Cir. Apr. 8, 1991)).

[88] *Wesley v. Don Stein Buick, Inc.*, 996 F. Supp. 1299, 1307 (D. Kan. 1998) (quotations and citations omitted).

[89] *Wesley*, 996 F. Supp. at 1307 (citing *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994)).

[90] *Id.* (citing *Brever*, 40 F.3d at 1126).

[91] *Abu-Nantambu-El v. Lovingier*, No. 06-cv-00945-WDM-CBS, 2007 WL 684138, at *3 (D. Colo. Jan. 3, 2007) (quotations and citation omitted) (alteration in original); *see also id.* ("It is well[ ]settled that a § 1985(3) conspiracy must be pleaded with more than conclusory allegations that defendants acted in concert or conspired without specific allegations to support such assertions." (quotations and citation omitted)); *Paulino v. One Unknown Deputy of U.S. Marshal Serv.*, No. 05-3348-SAC, 2006 WL 2088331, at *2 (D. Kan. July 25, 2006) ("Mere conclusory allegations of a conspiracy with no supporting factual averments are insufficient to state a claim under Section 1985(3)." (citing several Tenth Circuit cases)).

following conclusory allegations concerning whether a conspiracy existed: (1) "[Utah] County, through the actions of Sgt. Robinson . . . and Doe Deputies[,] combined their efforts to engage in tortious conduct toward Plaintiffs";[92] (2) "[t]ogether, Defendants conspired, 'either directly or indirection [sic],['] to deprive Plaintiffs 'equal protection[] of the law[s]' and/or of 'equal privileges and immunities under the laws'";[93] (3) "[t]ogether, Defendants conspired to wrongfully detain Plaintiffs and illegally search Plaintiffs' person [sic] and vehicle";[94] and (4) "Defendants had a meeting of the minds on their object or course of actions as demonstrated through Defendants' combined efforts of profiling Plaintiffs."[95] Those allegations fall well short of showing that a conspiracy existed because they are nothing more than a mere conclusory restatement of legal elements unadorned by any factual development. Therefore, the court grants Defendants' motion to dismiss Plaintiffs' section 1985(3) claim and dismisses that claim without prejudice.

V.   **The Court Grants and Denies Defendants' Motion to Dismiss Plaintiffs' State Constitutional Claims.**

To analyze Defendants' motion to dismiss Plaintiffs' state constitutional claims, the court first addresses certain legal standards that apply to those claims under Utah law. The Utah Supreme Court has held "that a plaintiff must establish the following three elements before he or she may proceed with a private suit for damages" for violations of a self-executing clause of the

---

[92] ECF No. 41 at ¶ 143.

[93] *Id*. at ¶ 144.

[94] *Id*. at ¶ 145.

[95] *Id*. at ¶ 146.

Utah Constitution.[96] "First, a plaintiff must establish that he or she suffered a 'flagrant' violation of his or her constitutional rights."[97] "Second, a plaintiff must establish that existing remedies do not redress his or her injuries."[98] "Third, a plaintiff must establish that equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries."[99] Those three elements apply equally to claims against either an individual municipal employee or a municipal entity.[100] In the context of a motion to dismiss, a plaintiff's complaint must include allegations showing each of those three elements.[101]

    With those legal principles in mind, the court turns to addressing Defendants' motion to dismiss Plaintiffs' state constitutional claims. As demonstrated below, the court: (A) grants Defendants' motion to dismiss Plaintiffs' state constitutional claims against Utah County; and (B) grants and denies Defendants' motion to dismiss Plaintiffs' state constitutional claims against Sgt. Robinson. Each issue is addressed in turn.[102]

---

[96] *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 16 P.3d 533, 538 (Utah 2000); *see also Kuchcinski v. Box Elder Cnty.*, 450 P.3d 1056, 1062 (Utah 2019).

[97] *Spackman*, 16 P.3d at 538.

[98] *Id.*

[99] *Id.* at 539.

[100] *Kuchcinski*, 450 P.3d at 1065, 1067.

[101] *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 237 (Utah 2014).

[102] In their opposition to Defendants' motion to dismiss, Plaintiffs did not address Defendants' arguments under *Spackman*. However, both parties presented argument on that issue at the hearing on Defendants' motion. Accordingly, the court addresses the issue despite Plaintiffs' failure to do so in their opposition.

A.  <u>The Court Grants Defendants' Motion to Dismiss Plaintiffs' State Constitutional Claims Against Utah County</u>.

The court grants Defendants' motion to dismiss Plaintiffs' state constitutional claims against Utah County because Plaintiffs have not alleged the necessary elements to establish municipal liability for Utah County. In *Kuchcinski*, the Utah Supreme Court held that the *Spackman* test applied with equal weight to municipal liability suits.[103] At the same time, the Utah Supreme Court set forth the elements required for a plaintiff to establish the first element of the *Spackman* test—a flagrant violation of state constitutional rights—when seeking to establish municipal liability. "Borrowing from Section 1983 jurisprudence," the Utah Supreme Court held that a plaintiff "must show an 'action pursuant to official municipal policy of some nature caused a constitutional tort'"[104] Additionally, "the plaintiff must show (1) the existence of a municipal policy or custom, (2) that this policy or custom 'evidences a "deliberate indifference"' to the plaintiff's constitutional rights, and (3) that this policy or custom was 'closely related to the ultimate injury.'"[105] "This is the same standard that federal courts apply in determining whether a § 1983 claim may be pursued against a municipality."[106]

The court concluded above that Plaintiffs have failed to adequately allege municipal liability for Utah County under section 1983. Because the first *Spackman* factor for municipal liability mirrors the test for municipal liability under section 1983, it logically follows that

---

[103] *Kuchcinski*, 450 P.3d at 1067.

[104] *Id.* (quoting *Monell*, 436 U.S. at 691).

[105] *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989)).

[106] *Finlinson v. Millard Cnty.*, 455 F. Supp. 3d 1232, 1243 (D. Utah 2020) (discussing *Kuchcinski*).

Plaintiffs have not sufficiently alleged the first *Spackman* factor. Therefore, Plaintiffs have failed

to properly allege municipal liability for Utah County for any state constitutional violations.

Accordingly, the court grants Defendants' motion to dismiss Plaintiffs' state constitutional claims

against Utah County and dismisses those claims with prejudice.

    B.  <u>The Court Grants and Denies Defendants' Motion to Dismiss Plaintiffs' State Constitutional Claims Against Sgt. Robinson</u>.

As shown below, the court: (1) grants Defendants' motion to dismiss Plaintiffs' due

process claim under Article I, Section 7 of the Utah Constitution against Sgt. Robinson because

Plaintiffs have not sufficiently alleged a violation of that constitutional provision, which means

that Plaintiffs cannot satisfy the first *Spackman* factor for that claim; (2) grants Defendants'

motion to dismiss Plaintiffs' claim for an unreasonable search under Article I, Section 14 of the

Utah Constitution against Sgt. Robinson because he did not directly participate in the Search,

and, therefore, Plaintiffs cannot satisfy the first *Spackman* factor for that claim; and (3) denies

Defendants' motion to dismiss Plaintiffs' claim for an unreasonable seizure under Article I,

Section 14 of the Utah Constitution against Sgt. Robinson for the Stop because all the elements

of *Spackman* are satisfied for that claim. Each issue is addressed in turn.

    1.  <u>The Court Grants Defendants' Motion to Dismiss Plaintiffs' Due Process Claim Under the Utah Constitution</u>.

Because Plaintiffs have failed to sufficiently allege a due process violation under Article

I, Section 7 of the Utah Constitution against Sgt. Robinson—or against any party for that

matter—the court grants Defendants' motion to dismiss that claim. Plaintiffs make one passing

reference to Article I, Section 7 of the Utah Constitution in their complaint[107] and make no

---

[107] ECF No. 41 at ¶ 125.

references to that section in their opposition to Defendants' motion to dismiss.[108] Further,

Plaintiffs did not present any argument concerning a due process violation at the hearing on

Defendants' motion. Under those circumstances, Plaintiffs have failed to allege any due process

violation, let alone a flagrant one. Thus, Plaintiffs have not made sufficient allegations to satisfy

the first prong of the *Spackman* test with respect to their due process claim under the Utah

Constitution. Therefore, the court grants Defendants' motion to dismiss that claim and dismisses

it without prejudice.

      2.   <u>The Court Grants Defendants' Motion to Dismiss Plaintiffs' Claim Against Sgt.
Robinson for an Unreasonable Search Under the Utah Constitution</u>.

The court grants Defendants' motion to dismiss Plaintiffs' claim for an unreasonable

search under Article I, Section 14 of the Utah Constitution against Sgt. Robinson. Above, the

court granted Defendants' motion to dismiss Plaintiffs' section 1983 claim against Sgt. Robinson

for violations of the Fourth Amendment with respect to the Search because he did not directly

participate in the Search. For the same reason, Plaintiffs have failed to sufficiently allege a claim

against Sgt. Robinson for an unreasonable search under the Utah Constitution and, therefore,

cannot satisfy the first *Spackman* factor for this claim. Accordingly, the court grants Defendants'

motion to dismiss that claim and dismisses it with prejudice.

      3.   <u>The Court Denies Defendants' Motion to Dismiss Plaintiffs' Claim Against Sgt.
Robinson for an Unreasonable Seizure Under the Utah Constitution</u>.

All three *Spackman* factors are satisfied for Plaintiffs' claim against Sgt. Robinson for an

unreasonable seizure under Article I, Section 14 of the Utah Constitution for the Stop. First,

Plaintiffs have shown a flagrant violation of their rights under Article I, Section 14 of the Utah

---

[108] ECF No. 55.

Constitution with respect to the Stop. When defining a flagrant violation, the *Spackman* court

essentially adopted the same standard for determining whether a right is clearly established for

purposes of qualified immunity. Indeed, the *Spackman* court stated that for a violation to be

flagrant, the "defendant must have violated 'clearly established' constitutional rights 'of which a

reasonable person would have known'"[109] and that "[t]o be considered clearly established, '[t]he

contours of the right must be sufficiently clear that a reasonable official would understand what

what he is doing violates that right.'"[110] Because the court concluded above that Plaintiffs have

demonstrated that their Fourth Amendment rights were clearly established at the time of the

Stop, the court likewise concludes that Sgt. Robinson committed a flagrant violation of Plaintiffs'

rights under Article I, Section 14 of the Utah Constitution with respect to the Stop.[111]

Second, at this stage of the case, determining whether Plaintiffs' existing remedies under

section 1983 would be sufficient to redress their injuries is premature. Another court in this

district previously stated with respect to *Spackman* that "a relatively clear pattern emerges

regarding how courts in this district have handled complaints that seek relief under both § 1983

claim and the Utah [C]onstitution."[112] Specifically, "[a]t the motion to dismiss stage, courts

allow both claims to proceed because it would be premature to determine which claim might be

---

[109] *Spackman*, 16 P.3d at 538 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[110] *Id.* (quoting *Anderson*, 483 U.S. at 639-40) (second alteration in original).

[111] The general standards for a *Terry* stop are the same under the United States Constitution and the Utah Constitution. *State v. DeBooy*, 996 P.2d 546, 549 (Utah 2000) ("Under both constitutions, the general rule is that 'specific and articulable facts . . . taken together with rational inferences from those facts, [must] reasonably warrant' the particular intrusion." (quoting *Terry*, 392 U.S. at 21) (alterations in original)).

[112] *Finlinson*, 455 F. Supp. 3d at 1244.

meritorious."[113] Consistent with that authority, the court will not determine at this stage of the case whether section 1983 provides an adequate remedy to redress Plaintiffs' alleged injuries related to the Stop.

Finally, equitable relief, such as an injunction, would not be adequate to protect Plaintiffs' rights or redress their alleged injuries. Indeed, the court cannot imagine any equitable relief that could be crafted to achieve those purposes. Because all three of the *Spackman* factors are satisfied with respect to Plaintiffs' claim against Sgt. Robinson for an unreasonable seizure under the Utah Constitution for the Stop, the court denies Defendants' motion to dismiss that claim.

## ORDER

For the reasons stated above, the court HEREBY ORDERS:

1. Defendants' motion to dismiss[114] is GRANTED IN PART and DENIED IN PART.

2. Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Equal Protection clause of the Fourteenth Amendment is DISMISSED WITHOUT PREJUDICE.

3. Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Fourth Amendment with respect to the Search is DISMISSED WITH PREJUDICE.

4. Plaintiffs' section 1983 claim against Sgt. Robinson for violations of the Fourth Amendment with respect to the Stop survives Defendants' motion to dismiss.

---

[113] *Id.* (citing *Ostler v. Harris*, No. 2:18-CV-00254, 2019 WL 2409633, at *3 (D. Utah June 7, 2019) and *McCubbin v. Weber Cnty.*, No. 1:15-CV-132, 2017 WL 3394593, at *23 (D. Utah Aug. 7, 2017)).

[114] ECF No. 49.

5.      Plaintiffs' section 1983 claims against Utah County are DISMISSED WITH
        PREJUDICE.

6.      Plaintiffs' section 1985(3) claim is DISMISSED WITHOUT PREJUDICE.

7.      Plaintiffs' state constitutional claims against Utah County are DISMISSED WITH
        PREJUDICE.

8.      Plaintiffs' claim for a due process violation under Article I, Section 7 of the Utah
        Constitution against Sgt. Robinson is DISMISSED WITHOUT PREJUDICE.

9.      Plaintiffs' claim for an unreasonable search under Article I, Section 14 of the Utah
        Constitution against Sgt. Robinson for the Search is DISMISSED WITH
        PREJUDICE.

10.     Plaintiffs' claim for an unreasonable seizure under Article I, Section 14 of the
        Utah Constitution against Sgt. Robinson for the Stop survives Defendants' motion
        to dismiss.

IT IS SO ORDERED.

DATED this 20th day of September 2024.

                                BY THE COURT:

                                _____
                                JARED C. BENNETT
                                United States Magistrate Judge